IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

STEPHEN M. TROTTER,
      Petitioner,

vs.                                         Case No.: 3:06cv432/LAC/EMT

WALTER A. McNEIL,[1]
      Respondent.
_____/

## ORDER, REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1). Respondent filed a partial answer and relevant portions of the state court record (*see* Docs. 20, 21). Petitioner filed a reply (Doc. 29). Respondent then filed a supplemental answer, to which Petitioner filed a reply (Docs. 31, 34).

      The matter is referred to the undersigned magistrate judge for Report and Recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

      The procedural background of this case is undisputed by the parties and established by the state court record. On July 26, 2000, in the Circuit Court in and for Escambia County, Florida, Petitioner pleaded nolo contendere in Case Number 99-4478-CF to one count of felony Driving

---

[1] Pursuant to 28 U.S.C. § 2242, the appropriate Respondent is the Secretary of the Department of Corrections, Walter A. McNeil; therefore, he shall be substituted as the sole Respondent in this cause, as the court has already done in the caption of this order.

While License Suspended ("DWLSR") and one count of misdemeanor Resisting an Officer (Doc. 21, Ex. A at 1–2, 19–20).[2] Petitioner was sentenced to a twenty-two month term of probation on the DWLSR offense, and "time-served" on the misdemeanor offense (Ex. A at 19–20, 22–23). On October 7, 2002, an amended affidavit of violation of probation ("VOP") was filed in Case Number 99-4478, alleging in relevant part that Petitioner had violated his probation by committing a new law offense; that is, Robbery, as evidenced by the filing of an information on September 6, 2002, in the Circuit Court in and for Escambia County, Florida, charging Petitioner with one count of Robbery in Case Number 02-4009-CF (Ex. A at 3, 41).

Following a jury trial on April 9, 2003, Petitioner was convicted of Robbery, as charged in the information in Case Number 02-4009 (Exs. B, C). Based in part on the evidence presented at Petitioner's jury trial, the trial court found that Petitioner had violated his probation in Case Number 99-4478 and revoked the probation (Ex. A at 78; Ex. C at 185–87, 204–05). Petitioner was sentenced to a ten-year term of imprisonment in Case Number 02-4009 and a consecutive two-year term of imprisonment in Case Number 99-4478 (Ex. A 70–76; Ex. C at 204–05).

Petitioner appealed his convictions and sentences to the Florida First District Court of Appeal ("First DCA") (Ex. A at 79; Ex. D). On June 15, 2004, the First DCA affirmed, per curium, without written opinion, with the mandate issuing July 1, 2004 (Exs. G, H). Trotter v. State, 875 So. 2d 1246 (Fla. 1st DCA 2004) (Table).

On June 24, 2004, Petitioner filed in the trial court a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 in Case Number 02-4009 (Ex. I at 1–21).[3] On December 7, 2004, the trial court issued an order summarily denying Petitioner's Rule 3.850 motion (Ex. I at 28–31). Petitioner appealed the denial to the First DCA (Ex. J at 268). On March 28, 2005,

---

[2] Hereafter all references to exhibits in this Report and Recommendation will refer to the exhibits filed by Respondent with his partial answer to Petitioner's habeas petition (i.e., Doc. 21, Exhibits).

[3] On the first page of the Rule 3.850 motion Petitioner indicated that the motion pertained only to his conviction in Case Number 02-4009 (Ex. I at 1). In describing the "[n]ature of the offense(s) involved," however, Petitioner stated "Bank Robbery 1 counts [sic] and Probation violation" (id. at 2). Notwithstanding, the grounds for relief stated in the Rule 3.850 motion relate to the effectiveness of Petitioner's trial counsel in (or related to) the trial and conviction in Case Number 02-4009, as well as the trial court's admission of "other bad acts" evidence during the same trial (see id. at 5–19). Moreover, the trial court's order denying Petitioner's Rule 3.580 lists only Case Number 02-4009 (id. at 28).

the First DCA affirmed, per curium, without written opinion, with the mandate issuing April 25, 2005 (Exs. K, L).  Trotter v. State, 898 So. 2d  944 (Fla. 1st DCA 2005) (Table).

On February 20, 2005, Petitioner filed a motion in the trial court, titled "Successive Motion," in Case Number 02-4009, in which he alleged a claim regarding the effectiveness of his trial counsel (Ex. M at 4–9).  On March 23, 2005, the trial court issued an order construing the motion as second Rule 3.850 motion, finding it to be successive, and summarily dismissing the motion with prejudice (Ex. M at 10–17).[4]  Petitioner appealed the dismissal to the First DCA (Ex. M at 18).  On June 14, 2005, the First DCA affirmed, per curium, without written opinion, with the mandate issuing July 12, 2005 (Exs. N, O).  Trotter v. State, 905 So. 2d 128 (Fla. 1st DCA 2005) (Table).

On March 29, 2005, Petitioner filed a petition for belated appeal in the First DCA regarding Case Numbers 99-4478 and 02-4009, and he filed an amended petition for belated appeal on October 5, 2005 (Exs. P, Q).  On November 17, 2005, the First DCA issued an opinion denying the petition on the merits (Ex. R).  Trotter v. State, 923 So. 2d 515 (Fla. 1st DCA 2005).  On March 31, 2006, Petitioner filed a motion for rehearing in the First DCA, which was denied in an order issued May 18, 2006 (Exs. S, T).

On March 10, 2006, Petitioner filed in the First DCA a petition for writ of habeas corpus alleging ineffective assistance of appellate counsel in Case Number 02-4009, alleging in relevant part that appellate counsel was ineffective in failing to raise on appeal any claim regarding the robbery conviction in Case Number 02-4009 and in failing to follow the procedures set forth in Anders v. California, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967) (Ex. U).[5]  On March 27, 2006, the First DCA issued an order stating that it was treating Petitioner's petition as a petition alleging ineffective assistance of appellate counsel under Florida Rule of Appellate Procedure 9.141(c) (Ex. V).  On May 9, 2006, the First DCA issued an opinion denying the petition on the merits (Ex. W).  Trotter v. State, 929 So. 2d 612 (Fla. 1st DCA 2006).  On May 23, 2006, Petitioner

---

[4] The order of the trial court also noted that Petitioner's second Rule 3.580 motion was "repetitious in addition to being an abuse of process" (Ex. M at 11).

[5] The notice of appeal (filed after Petitioner's Robbery trial/conviction and the revocation of his probation) listed Case Numbers 02-4009 and  99-4478 (see Ex. A at 79), but Petitioner's appellate counsel raised only one ground for relief, which related to the revocation of probation in Case Number 99-4478 (i.e., that Petitioner's probation was revoked based upon a violation that was not properly charged in the amended VOP affidavit) (see Ex. D).

filed a motion for rehearing, which was denied by the First DCA in an order issued June 19, 2006 (Exs. X, Y).

Petitioner filed the instant habeas action on October 1, 2006 (Doc. 1 at 6). Respondent concedes that the petition is timely, but contends that Petitioner in not entitled to relief on his claims (Docs. 20, 31). Specifically, Respondent contends that Petitioner's first claim for relief should be denied on the merits, and Petitioner's remaining claims, as asserted in Grounds Two, Three, Four, and Five, are procedurally defaulted because Petitioner failed to properly present those federal claims to the state courts and is now precluded from doing so (Docs. 20, 31).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[6]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u>, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  <u>Neelley v. Nagle</u>, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* <u>Parker v. Head</u>, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts

---

[6] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." Williams, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28

U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 551 U.S. 930, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

III.    EXHAUSTION AND DEFAULT

Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States."

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[7] thereby giving

---

[7] Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement. In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. 404 U.S. at 277. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id. at 278, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. In Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt. Id. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)). The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." Id. (internal quotation marks omitted). The Court

---

(A)  the applicant has exhausted the remedies available in the courts of the State; or
(B) (i)  there is an absence of available State corrective process; or
        (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the <u>cited</u> case advanced a federal claim. *Id.* at 7 & n.3. Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought. *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in <u>Duncan</u>, 513 U.S. at 364. The <u>Duncan</u> Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[8] The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." *Id.* at 365–66. Recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." <u>Baldwin v. Reese</u>, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). The <u>Baldwin</u> Court commented that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.*, 541 U.S. at 32. With regard to this statement, the Eleventh Circuit stated in <u>McNair v. Campbell</u>, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the

---

[8] The petitioner in <u>Duncan</u> raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal. Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

federal judiciary.'" McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302–03 (citations omitted).[9]

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review. Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See* Coleman v. Thompson, 501 U.S. 722, 734–35 & n.1, 111 S. Ct. 2546, 2555 & n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303. In the second instance, a federal court must determine whether the last state court rendering judgment clearly and expressly stated its judgment rested on a procedural bar. *Id*. A federal court is not required to honor a state's procedural default ruling unless that ruling rests on adequate state grounds independent of the federal question. *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. Lee v.

---

[9] In his initial brief before the Court of Criminal Appeals, the petitioner cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. *Id*.

Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[10] *Id.* Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. Third, the state procedural rule must be adequate. *Id.* The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Id.*

A petitioner can overcome a procedural default in two narrow circumstances. The petitioner must either show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim. Henderson v. Haley, 353 F.3d 880, 892 (11th Cir. 2003); Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. Tower, 7 F.3d at 210. Furthermore, the Eleventh Circuit has held that because there is no constitutional right to an attorney in state post-conviction proceedings, any ineffectiveness of post-conviction counsel cannot be "considered cause for the purposes of excusing . . . procedural default that occur[s] . . . at the state collateral post-conviction level." Henderson, 353 F.3d 892 (citing 28. U.S.C. § 2254(i); Coleman v. Thompson, 501 U.S. 722, 752 (1991); In re Magwood, 113 F.3d 1544, 1551 (11th Cir. 1997); Johnson v. Singletary, 938 F.2d 1166, 1174–75 (11th Cir. 1991)). To establish prejudice, a petitioner must show that there is "at least a reasonable probability that the result of the proceeding would have been different." *Id.*

---

[10] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits. Marek v. Singletary, 62 F.3d 1295, 1301–02 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

Alternatively, to satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further,

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

Id.

Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS

A.    Ground One: "Ineffective Assistance of Appellate counsel/Failing to do a direct appeal (nor) Anders Brief. Appellate counsel failed to advise the appeal court (and) request permission to withdraw, supplying appeal court with brief referring to anything in record of Case # 02-4009 that might arguably support appeal and allow [Petitioner] to raise any points he chose as required."

(Doc. 1 at 4). Petitioner contends that a timely notice of appeal was filed following his conviction in Case Number 02-4009 and the revocation of his probation in Case Number 99-4478, and the Notice of Appeal listed both case numbers, but his appellate counsel raised no claims regarding the conviction in Case Number 02-4009 and failed to comply with the procedures set forth in Anders, 386 U.S. at 738 (Doc. 1 at 4 and continuation pages 1–5). Specifically, Petitioner asserts that appellate counsel was ineffective because he failed to raise on direct appeal claims regarding the effectiveness of Petitioner's trial counsel in Case Number 02-4009 (id.).[11]

1.    Clearly Establish Federal Law

The proper standard for evaluating a claim of ineffective assistance of appellate counsel is the same standard for evaluating trial counsel's performance set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). See Smith v. Robbins, 528 U.S. 259,

---

[11] Petitioner provided to the First DCA, with his petition alleging ineffective assistance of appellate counsel, a copy of the pro se initial appellate brief he would have filed had he been given an opportunity to do so (see Ex. U, Attach.). In the brief Petitioner asserts four claims of ineffective assistance of trial counsel (id.).

285, 120 S. Ct. 746, 764, 145 L. Ed. 2d 746 (2000) (citing Smith v. Murray, 477 U.S. 527, 535–36, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986) (applying Strickland to claim of attorney error on appeal)). The habeas petitioner must first show that his counsel was objectively unreasonable in failing to raise a particular issue on appeal. Strickland, 466 U.S. at 687–91. Where an issue is not preserved for appellate review, appellate counsel's failure to raise the issue is not constitutionally deficient as it is based on the reasonable conclusion that the appellate court will not hear the issue on its merits. Atkins v. Singletary, 965 F.2d 952, 957 (11th Cir. 1992); Francois v. Wainwright, 741 F.2d 1275, 1285–86 (11th Cir. 1984). Additionally, appellate counsel cannot be deemed ineffective for failing to raise issues "reasonably considered to be without merit." United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (quoting Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984)). If the petitioner succeeds in such a showing, he then has the burden of demonstrating prejudice. That is, he must show a reasonable probability that, but for his counsel's unreasonable failure to raise the issue, he would have prevailed on his appeal. Smith, 528 U.S. at 285–86 (citing Strickland, 466 U.S. at 694 (defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different")); Nyhuis, 211 F.3d at 1344 (citing Miller v. Dugger, 858 F.2d 1536, 1538 (11th Cir. 1988)). As the Eleventh Circuit noted in Johnson v. Alabama, 256 F.3d 1156 (11th Cir. 2001), "It is difficult to win a Strickland claim on the grounds that appellate counsel pressed the wrong legal arguments where the arguments actually pursued were reasonable in the circumstances." Id. at 1188. The Eleventh Circuit emphasized that even in a death penalty case, counsel must be "highly selective about the issues to be argued on appeal . . . ." Id. (citation omitted).

2.    Federal Review of State Court Decision

Petitioner raised this claim in the petition alleging ineffective assistance of appellate counsel (Exs. U, V). The First DCA issued an opinion stating that the petition was denied on the merits (Ex. W). Although the state court's denial of Petitioner's claim without explanation provides no guidance to this court in determining the rationale for its decision, this court must still defer to the state court decision unless review of the record shows that decision to be contrary to or an unreasonable application of clearly established federal law. See Wright v. Sec'y for Dep't of Corr., 278 F.3d 1245, 1255–56 (11th Cir. 2002) (holding that a state court decision that does not rest on

procedural grounds alone is an adjudication on the merits and, therefore, entitled to deference under the AEDPA, even if the state court decision is not explained in a written opinion, and reviewing state court's rejection of claim to determine whether it was unreasonable application of clearly established federal law).

As discussed *supra*, to prevail on this claim, Petitioner must first show that his appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and if Petitioner succeeds in such a showing, he must demonstrate prejudice (i.e., a reasonable probability that, but for his counsel's unreasonable failure to raise the issue, he would have prevailed on his appeal). Smith, 528 U.S. at 285–86. Here, Petitioner claims his appellate counsel was ineffective for failing to raise four claims of ineffective assistance of trial counsel in Case Number 02-4009 (*see* Ex. U, Attach. (Petitioner's proposed pro se initial appellate brief)). In Florida, however, claims of ineffective assistance of trial counsel are disfavored on direct appeal. As the Florida Supreme Court has recently stated:

> Claims of ineffective assistance of trial counsel are usually presented in a postconviction motion under Florida Rule of Criminal Procedure 3.850. Under that rule, the circuit court can be specifically presented with the claim, and apply the Strickland standard with reference to the full record and any evidence it may receive in an evidentiary hearing, including trial counsel's testimony. Thus, ineffective assistance claims are not usually presented to the judge at trial, <u>and we have repeatedly stated such claims are not cognizable on direct appeal</u>. *E.g.*, Martinez v. State, 761 So. 2d 1074, 1078 n.2 (Fla. 2000) ("With rare exception, ineffective assistance of counsel claims are not cognizable on direct appeal."); McKinney v. State, 579 So. 2d 80, 82 (Fla. 1991) ("Claims of ineffective assistance of counsel are generally not reviewable on direct appeal but are more properly raised in a motion for postconviction relief."); Kelley v. State, 486 So. 2d 578, 585 (Fla. 1986) (same); State v. Barber, 301 So. 2d 7, 9 (Fla. 1974) (holding that claims of ineffective assistance of counsel "cannot properly be raised for the first time on direct appeal" because the trial court has not previously ruled on the issue).

Smith v. State, 998 So. 2d 516, 522 (Fla. 2008) (emphasis added).

The Smith court recognized that appellate counsel may successfully raise the issue on direct appeal where trial counsel's ineffectiveness is apparent on the face of the record and it would be a waste of judicial resources to require the trial court to address the issue, but noted that such cases are "rare exceptions." *Id.* at 522–23 (citing Blanco v. State, 507 So. 2d 1377, 1384 (Fla. 1987); Gore v. State, 784 So. 2d 418, 437–38 (Fla. 2001); Mansfield v. State, 758 So. 2d 636, 642 (Fla. 2000)

(same)); *see also* <u>Digsby v. McNeil</u>, 2009 WL 331554, at *9 (N.D. Fla. Feb. 9, 2009) ("direct appellate review of a claim that trial counsel was ineffective is both discretionary and rare in Florida").

Although Petitioner acknowledges the general prohibition against raising ineffective assistance of trial counsel claims on direct appeal, he generally asserts that the claims his appellate counsel should have raised (as asserted in Petitioner's proposed pro se initial appellate brief) "were apparent from the face of the record and [] affected the trial to such of a degree that it can not be said that absent said error(s) the result of the trial wold have been the same" (Ex. U, Attached Proposed Brief at 3–4; *see also* Doc. 34 at 8–11). Petitioner, however, has merely recited the standard for raising such claims on direct appeal without any specific support in the record. Moreover, the court concludes that the ineffective assistance of trial counsel claims proposed by Petitioner (i.e., that trial counsel failed to move to suppress an audiotape and a videotape and/or failed to object to the introduction of the tapes in evidence at trial, failed to object to the introduction of a transcript of the audiotape in evidence at trial, and failed to object to and/or elicited testimony concerning Petitioner's probationary status and use of a false name (Ex. U, Attached Proposed Brief at 5–17; *see also* Doc. 34 at 9–10)), fall into the "normal" category of claims that should have been addressed in a motion for post-conviction relief filed with the trial court, not the "rare" category of claims that may be pursued on direct appeal. Thus, appellate counsel did not perform deficiently by failing to raise the proposed ineffective assistance of trial counsel claims on direct appeal. *See* <u>Nyhuis</u>, 211 F.3d at 1344 (appellate counsel cannot be deemed ineffective for failing to raise issues "reasonably considered to be without merit") (citation omitted). Moreover, Petitioner cannot demonstrate that he was prejudiced by his appellate counsel's failure to raise the claims. First, no reasonable probability exists that, but for appellate counsel's failure to raise the claims, Petitioner would have prevailed on his appeal. Indeed, the appellate court would likely have concluded that the ineffective assistance of trial counsel claims were not cognizable on direct appeal. Second, Petitioner had an opportunity to raise the same claims in his first Rule 3.850 motion. Accordingly, the state court's denial of Petitioner's petition alleging ineffective assistance of appellate counsel was neither contrary to, nor an unreasonable application of, <u>Strickland</u>, and Petitioner is not entitled to relief on this claim.

B.      Grounds Two through Five

Ground Two:  "Trial counsel failed to suppress or lodge a timely objection to a[n]
irrelevant and inadmissible videotape which was never properly authenticated nor
admissible under the business records exception to the hearsay rule."

Ground Three:  "Trial counsel failed to move to suppress or lodge a timely objection
to an audiotape that had not been properly authenticated to be introduced into
evidence."

Ground Four:  "Trial counsel failed to suppress or lodge a timely objection to a
transcript of [the] audiotape that was sent back to the jury but had not been properly
authenticated or introduced into evidence."

Ground Five: "Trial counsel failed to move to suppress or lodge a timely objection
[regarding Petitioner] being on probation or using a false name as being irrelevant."

(Doc. 1 at 4–5, 7) (parentheses omitted).

Respondent asserts that Grounds Two through Five should be dismissed with prejudice
because they are procedurally barred or defaulted (Doc. 20 at 6; Doc. 31 at 11).  In response,
Petitioner appears to contend that the claims are not barred or defaulted because they were presented
in the petition alleging ineffective assistance of appellate counsel, in which Petitioner alleged
counsel was ineffective for failing to raise on direct appeal the claims asserted here in Grounds Two
through Five (*see* Doc. 29; Doc. 34 at 11).  Moreover, Petitioner contends the First DCA erred in
denying the petition alleging ineffective assistance of appellate counsel without holding an
evidentiary hearing or attaching to its order portions of the state court record conclusively
establishing that Petitioner's claims had no merit and he was not entitled to relief (Doc. 29 at 2).[12]

1.       Summary of Relevant State Post-Conviction Proceedings

Before discussing Respondent's assertion, it is helpful to summarize the claims raised by
Petitioner in the relevant state post-conviction proceedings.  Following the resolution of Petitioner's
direct appeal, Petitioner filed a Rule 3.850 motion in the trial court, alleging the following claims:

---

[12] Petitioner's claim regarding alleged procedural defects by the First DCA in denying his petition is not
cognizable on federal habeas review and need not be discussed further.  It is well established that an alleged defect in
a collateral proceeding does not state a basis for habeas relief; rather, habeas relief is available to address only defects
in a criminal defendant's conviction and sentence.  *See* Quince v. Crosby, 360 F.3d 1260, 1261–62 (11th Cir. 2004)
(citing Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987)).

(1) trial counsel failed to investigate, depose, and call two alibi witnesses on Petitioner's behalf (Ex. I at 5–7); (2) trial counsel failed to move to suppress, or otherwise challenge the admissibility of, evidence (i.e., clothing and bandannas) obtained during an unlawful and warrantless search of Petitioner's residence (*id*. at 8); (3) trial counsel failed to move for a judgment of acquittal during Petitioner's trial (*id*. at 9–11); (4)(a) trial counsel failed to move to suppress, or otherwise challenge the admissibility of, an audiotape recording of a phone conversation between Petitioner and his wife, and (4)(b) trial counsel failed to object to "other bad acts" evidence (*id*. at 12–14);[13] and (5) the trial court committed reversible error in allowing the prosecutor to use "collateral/crime other bad act evidence" (*id.* at 15–19).

In Petitioner's "Successive [Rule 3.850] Motion," Petitioner alleged the following claim for relief: trial counsel unreasonably failed to investigate Petitioner's case, conduct pre-trial discovery, or prepare for trial, and if trial counsel had done so he would have discovered grounds for suppressing the audiotaped conversation between Petitioner and Petitioner's wife (Ex. M at 4–9).

Lastly, in Petitioner's petition alleging ineffective assistance of appellate counsel, Petitioner alleged the following ground for relief: appellate counsel failed to raise any issues regarding Petitioner's conviction in Case Number 02-4009, "raising 'only' the conviction in [] Case # 99-4478," and appellate counsel failed to comply with the procedures set forth in Anders (Ex. U at 1–7). As discussed *supra*, Petitioner attached to the state petition a copy of the pro se initial appellate brief he would have filed in Case Number 02-4009 if had been given the opportunity to do so (Ex. U, Attached Proposed Brief).  In the proposed pro se brief, Petitioner asserts the following specific grounds for relief:  (1) trial counsel failed to move to suppress, or otherwise challenge the admissibility of, a videotape (that purportedly depicted the place of Petitioner's alibi at the time of the robbery but did not show that Petitioner was at the place of his alibi at the time of the robbery) (*id*. at 4–7), (2) trial counsel failed to move to suppress, or otherwise challenge the admissibility of, an audiotape recording of a conversation between Petitioner and Petitioner's wife (*id*. at 8–9); (3) trial counsel failed to move to suppress, or otherwise challenge the admissibility of, the transcript of the audiotape recording (*id*. at 10–13); (4) trial counsel failed to move to suppress, or otherwise

---

[13] As discussed more fully *infra*, Petitioner did not divide his fourth claim for relief into two parts.  The undersigned has done so here for organizational purposes, labeling the subparts of Claim Four as parts 4(a) and 4(b).

challenge the admissibility of, testimony concerning Petitioner's use of a false name; trial counsel elicited testimony revealing that Petitioner was on probation and/or had an outstanding VOP warrant; and trial counsel failed to request a cautionary instruction regarding such testimony (*id.* at 14–17), which are the same claims asserted in Grounds Two through Five of the instant habeas petition.

## 2. Discussion

Initially, Petitioner's assertion that he exhausted Grounds Two through Five by raising them in the proposed pro se initial appellate brief (attached to the petition alleging ineffective assistance of appellate counsel and filed in the First DCA) is unavailing. The sole issue presented by Petitioner in his petition alleging ineffective assistance of appellate counsel was whether his <u>appellate</u> counsel was ineffective. In support of this claim, Petitioner identified the issues he believed should have been raised on direct appeal by including them in a <u>proposed</u> appellate brief, which he claimed he would have filed had he been given the opportunity. The issues included in the proposed brief were not properly before the First DCA for substantive review; the only issue properly before the court was the issue of appellate counsel's performance. Furthermore, as previously discussed, claims of ineffective assistance of <u>trial</u> counsel in the nature of Petitioner's claims are properly raised in the Florida courts in a Rule 3.850 motion. Therefore, contrary to Petitioner's assertion, Grounds Two through Five were not exhausted by virtue of Petitioner's presenting them in his proposed pro se initial appellate brief in support of his petition alleging ineffective assistance of appellate counsel.

Notwithstanding the foregoing conclusion, Grounds Three and Five on the instant habeas petition require further discussion.[14] With regard to Ground Three, although Petitioner presented

---

[14] Ground Two of the instant petition (alleging ineffective assistance of trial counsel regarding admission of the <u>videotape</u>, as opposed to the audiotape) and Ground Four (alleging ineffective assistance of trial counsel regarding admission of the <u>transcript</u> of the audiotape, as opposed to the audiotape) clearly were not properly presented in any post-conviction filing with the state courts, as they were mentioned <u>only</u> in the pro se brief submitted by Petitioner with the petition alleging ineffective assistance of appellate counsel. Furthermore, it is clear from state law that any future attempts at exhaustion would be futile, as any attempt by Petitioner to assert the claims in another Rule 3.850 motion would be denied as successive. Therefore, the claims raised by Petitioner in Grounds Two and Four are procedurally barred from federal habeas review. *See* <u>Bailey</u>, 172 F.3d at 1305 ("[F]ederal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile.") (internal quotation omitted).

a claim of ineffective assistance of trial counsel concerning admission of the audiotape in the first Rule 3.850 motion, it was not the same claim that he asserts as Ground Three in the instant petition. In Claim 4(a) of his Rule 3.850 motion, Petitioner claimed that trial counsel was ineffective for failing to move to suppress, or otherwise challenge the admissibility of, the audiotape <u>on the ground that Petitioner's conversation with his wife was protected by the husband-wife privilege</u>, as provided in the Florida Evidence Code, § 90.504, Fla. Stat. (1978)[15] (*see* Ex. I at 12–13).  And in a related argument, Petitioner appears to have asserted that trial counsel should have objected to the State's calling of his wife as witness, in part, because she was asked questions regarding conversations she had with Petitioner in violation of the Florida husband-wife privilege (*id.*; *see also* Ex. B at 70–77). In the instant habeas petition, however, Petitioner alleges trial counsel should have challenged the admissibility of the audiotape <u>on the ground that the tape was not properly authenticated</u> (Doc. 1 at 8).  Specifically, Petitioner asserts that the audiotape was introduced in evidence through the testimony of Detective Miller during the state's case-in-chief, but Detective Miller was not present when the audiotaped conversation took place, and Detective Miller was not the person that recorded the conversation (*id.*).  The claim raised as Ground Three in the instant petition is not the same claim raised in the first Rule 3.850 motion.  Additionally, although Petitioner raised an ineffective assistance of trial counsel claim regarding admission of the audiotape in his successive Rule 3.850 motion, the claim was based on an allegedly unauthorized interception of a wire or oral

---

[15] Section 90.504 provides:

(1) A spouse has a privilege during and after the marital relationship to refuse to disclose, and to prevent another from disclosing, communications which were intended to be made in confidence between the spouses while they were husband and wife.

(2) The privilege may be claimed by either spouse or by the guardian or conservator of a spouse. The authority of a spouse, or guardian or conservator of a spouse, to claim the privilege is presumed in the absence of contrary evidence.

(3) There is no privilege under this section:

    (a) In a proceeding brought by or on behalf of one spouse against the other spouse.

    (b) In a criminal proceeding in which one spouse is charged with a crime committed at any time against the person or property of the other spouse, or the person or property of a child of either.

    (c) In a criminal proceeding in which the communication is offered in evidence by a defendant-spouse who is one of the spouses between whom the communication was made.

communication in violation of federal law (Ex. M at 5–7).[16] Therefore, Petitioner failed to properly raise a claim regarding counsel's failure to challenge the authenticity of the tape in the state courts. Moreover, as discussed *supra*, it is clear from state law that any future attempts at exhaustion would be futile, as any attempt by Petitioner to assert the claim in another Rule 3.850 motion would be denied as successive. Therefore, the claim raised by Petitioner in Ground Three is procedurally barred from federal habeas review.

As to Ground Five, Petitioner alleges several related claims regarding the ineffectiveness of his trial counsel (Doc. 1 at 13–15). Specifically, Petitioner contends that trial counsel was ineffective for failing to object to the direct testimony of Officer Tyree, during the state's case-in-chief, that Petitioner provided a false name to Officer Tyree when Petitioner was first approached about the robbery (*id.* at 13). Next, Petitioner contends that trial counsel was ineffective during his cross-examination of Officer Tyree because he elicited testimony from Officer Tyree that revealed Petitioner had an outstanding VOP warrant at the time he was approached by Officer Tyree (*id.* at 13–14).[17] Petitioner then asserts that the prosecutor, without objection by Petitioner's trial counsel, used the testimony elicited from Officer Tyree to impeach Petitioner during his cross-examination (*id.* at 14). Lastly, Petitioner contends that trial counsel's errors were compounded because trial counsel failed to seek a curative instruction regarding the testimony, the prosecutor emphasized Petitioner's use of a false name during closing arguments, and trial counsel discussed the VOP warrant during closing argument in an "attempt[] to minimize the damage that he allowed to occur[]" during Officer Tyree's testimony (*id.*).

Petitioner raised similar claims in his first Rule 3.850 as Claims Four and Five. In Claim Five of Petitioner's Rule 3.850 motion Petitioner asserted a claim of <u>trial court</u> error regarding the admission of testimony concerning Petitioner's previous convictions for crimes involving dishonesty or falsehood and use of a false name (Ex. I at 16). However, a claim of trial court error, despite

---

[16] Even if Petitioner had raised a claim based on the authenticity of the audiotape in the successive Rule 3.850 motion, the claim would be still be procedurally barred from federal review because the state court rejected it on the independent and adequate state ground of procedural bar, specifically, Rule 3.850(f).

[17] Trial counsel apparently elicited this testimony to demonstrate that Petitioner provided a false name to Officer Tyree <u>not because he was involved in the robbery</u>, but because he was attempting to avoid arrest on an outstanding VOP warrant at the time he was questioned by Officer Tyree (*see* Doc. 1 at 13–14).

involving the same "bad act" evidence, is clearly not the same as a claim regarding the ineffectiveness of trial counsel.

In Claim Four of the Rule 3.850 motion, Petitioner generally alleged ineffective assistance of trial counsel based on trial counsel's failure to object to admission of the audiotape on grounds of husband-wife privilege (*see* Ex. I at 12–13).[18]  In the concluding portion of Claim Four, however, Petitioner stated that trial counsel failed "to object or move to exclude from evidence the intercepted privileg [sic] communication phone conversation between husband and wife, and the **OTHER BAD ACTS** in which the prosecutor gave no prior notice on and impermissibly used or introduce [sic] in [Petitioner's] trial . . . [and which] affect[ed] the verdict of the jury" (Ex. I at 13–14) (emphasis in original).[19]  In light of this concluding paragraph, the undersigned construes Petitioner's Claim Four as including two grounds for relief.  The issue thus becomes whether the claim presented by Petitioner in the concluding paragraph (labeled by the undersigned as Claim 4(b)) is the same claim presented in Ground Five of the instant habeas petition.  Upon careful review, the undersigned concludes that the claims are not the same.

Initially, in Claim 4(b) of the Rule 3.850 motion, Petitioner specifically alleged that trial counsel was ineffective because he failed to object <u>during the prosecutor's cross-examination of Petitioner</u> to questions concerning Petitioner's prior convictions for crimes involving dishonesty or false statements and Petitioner's providing a false name when he was first approached about the robbery (*see* Ex. I at 13–14).  In contrast, in Ground Five of the instant petition, Petitioner complains that trial counsel was ineffective because he failed to object <u>during the prosecutor's direct examination of Officer Tyree</u> to questions concerning Petitioner's providing a false name to Officer Tyree (Doc. 1 at 13–14).  Thus, an analysis of Claim 4(b) would require consideration of permissible areas of impeachment by a prosecutor during a defendant's cross-examination; whereas, an analysis of the instant claim would entail consideration of the admissibility of evidence during the

---

[18] Indeed, in the order denying Petitioner's Rule 3.850 motion the trial court construed Claim Four as raising only one claim; that is, a claim regarding trial counsel's failure to move to suppress the audiotape on the basis of privilege (*see* Ex. I at 30–31).

[19] In identifying the "other bad acts" referenced in Claim 4(b) Petitioner specifically pointed to his (Petitioner's) testimony, elicited by the prosecutor during Petitioner's cross-examination, concerning Petitioner's previous convictions for crimes involving dishonesty or falsehood and his providing a false name to Officer Tyree (Ex. I at 13–14).

prosecution's case-in-chief (specifically, whether Petitioner's counsel had a meritorious basis for objecting to Officer Tyree's testimony regarding Petitioner's providing a false name when he was first approached by Officer Tyree about the robbery).

Additionally, in Claim 4(b) of the Rule 3.850 motion, Petitioner's arguments concern trial counsel's failure to object to alleged misconduct by the prosecutor (during Petitioner's cross-examination), such as the prosecutor's use or introduction of "other bad acts" evidence at trial and/or the prosecutor's failure to provide notice of his intent to use "other bad act" evidence (*see id.*). Therefore, an analysis of Claim 4(b) would additionally entail consideration of a prosecutor's obligation to provide certain pre-trial disclosures or "notices" to a defendant, but no such issues are raised in Ground Five of the instant petition.

Furthermore, in Ground Five of the instant petition Petitioner complains that trial counsel was ineffective because he elicited testimony from Officer Tyree on cross-examination that Petitioner had an outstanding VOP warrant (Doc. 1 at 13–14). No such issue was raised in Claim 4(b) of the Rule 3.850 motion, which related to alleged misconduct by the prosecutor during Petitioner's cross-examination. Indeed, in Claim 4(b) no mention was made of Officer Tyree's testimony regarding Petitioner's VOP warrant, whereas it is a central point in Petitioner's claim for relief in Ground Five (*see* Doc. 1 at 13–15).

Moreover, although Petitioner's argument in Ground Five mentions the prosecutor's questioning him (Petitioner) about his use of a false name and the VOP warrant during cross-examination (*see* Doc. 1 at 14), it is in support of Petitioner's attempt to demonstrate how he was prejudiced by defense counsel's failure to object during the prosecutor's direct examination of Officer Tyree and his allegedly ineffective cross-examination of Officer Tyree. Thus, although the issues in Claim 4(b) of the Rule 3.850 motion and Ground Five of the instant petition overlap, they are nevertheless distinct. Claim 4(b) was based on trial counsel's failure to object during Petitioner's cross-examination, whereas Ground Five is based on trial counsel's conduct during the direct and cross-examination of Officer Tyree (and errors that flowed therefrom). Having determined that the claim asserted in Ground Five of the instant petition was not fairly presented in Petitioner's Rule 3.850 motion or properly raised in any other post-conviction motion, the undersigned concludes that Petitioner failed to exhaust Ground Five in the state courts.

As with Petitioner's Grounds Two, Three, and Four, Petitioner would be precluded from now raising this claim in the state courts, as the state procedural rules do not provide for a second appeal of a Rule 3.850 motion, and a third Rule 3.850 motion would clearly be subject to dismissal as a successive motion, pursuant to Rule 3.850(f), much like Petitioner's second Rule 3.850 motion was dismissed as successive.  Therefore, the claim is procedurally defaulted.

Finally, with respect to all of Petitioner's unexhausted claims, Grounds Two through Five, Petitioner does not allege cause for his failure to properly present his federal claims in the state courts, or that he will suffer prejudice as a result of this court's failure to review the claims. Furthermore, Petitioner has failed to show that he is entitled to review under the "fundamental miscarriage of justice" exception to the procedural bar.[20]

Accordingly, it is **ORDERED**:

The clerk shall modify the docket to reflect that Walter A. McNeil is the sole Respondent in this action.

And it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola, Florida, this 25th day of September 2009.

/s/ Elizabeth M. Timothy
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**<u>NOTICE TO THE PARTIES</u>**

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**

---

[20] Although Petitioner has asserted in Ground Five that he is "innocent" (*see* Doc. 1 at 15), he has not supported his assertion with new reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that was not presented at trial.  <u>Schlup</u>, 513 U.S. at 327.  Thus, he has not shown that "a constitutional violation has probably resulted in the conviction of one who is actually innocent, *id.*, and has correspondingly failed to establish the "fundamental miscarriage of justice" exception to the procedural bar.